FILED

2020 Aug-04  PM 04:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| JOHN CHRISTOPHER COVEY, } | |
| } | |
|     **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 2:18-CV-01121-RDP** |
| } | |
| COLONIAL PIPELINE COMPANY, et } | |
| al., } | |
| } | |
|     **Defendants.** } | |

| | |
|---|---|
| HUGH GERALD DELAUGHDER, JR., et } | |
| al., } | |
| } | |
|     **Plaintiffs,** } | |
| } | |
| v. } | **Case No.: 2:19-CV-923-RDP** |
| } | |
| COLONIAL PIPELINE COMPANY, et } | |
| al., } | |
| } | |
|     **Defendants.** } | |

| | |
|---|---|
| BEVERLY KAY WILLINGHAM, } | |
| **Individually and as Administratrix of the** } | |
| **Estate of ANTHONY LEE** } | |
| **WILLINGHAM, deceased,** } | |
| } | |
|     **Plaintiffs,** } | |
| } | |
| v. } | **Case No.: 2:19-CV-01507-RDP** |
| } | |
| COLONIAL PIPELINE COMPANY, et } | |
| al., } | |
| } | |
|     **Defendants.** } | |

## **MEMORANDUM OPINION**

This case is before the court on the documents submitted by Glenda Cochran and L.E. Bell in response to the court's Scheduling Orders on the Motion to Disqualify. (Case No. 2:18-cv-01121-RDP, Docs. # 91, 93, 94, 95). [1] Before the court begins its analysis, it will provide a brief overview of the relevant facts.

### I.   Background

These consolidated cases stem from the October 31, 2016, explosion at a Colonial Pipeline work site in Helena, Alabama. (Doc. # 1). Three cases (which each involved the same set of operative facts) were filed in the Northern District of Alabama, (Case # 2:18-cv-01121-RDP; 2:19-CV-923-RDP; 2:19-CV-01507-RDP), and three cases were filed in Alabama state court. (*See* Doc. # 63). On October 11, 2019, the federal cases were consolidated before the undersigned. [2] (Doc. # 64).

On November 27, 2019, L.E. Bell filed a Motion to Disqualify Glenda Cochran and Associates as "de facto" lead Plaintiff's counsel in the consolidated federal action, as well as the corresponding state court cases. (Doc. # 68). After multiple status conferences regarding the Motion to Disqualify, the court permitted the parties to engage in limited, written discovery on this issue. (Doc. # 73). The parties were required to prepare a detailed privilege log listing any privileged documents and communications. (*Id.* at 2). Both Ms. Cochran and L.E. Bell have objected to multiple items listed on the parties' respective privilege logs.

In response, the court entered a Scheduling Order on the Motion to Disqualify. (Doc. # 82,

---

[1] Unless otherwise noted, the citations in this document correspond with the documents in case 2:18-cv-01121-RDP.

[2] The consolidation order (Doc. # 64) stated that this court and Judge Alvis, of the Shelby County Circuit Court, will work together to informally coordinate the parties' discovery efforts. (*Id.*). However, the cases in Shelby County Circuit Court have been reassigned to Judge Corey Moore. In a discussion this past week, Judge Moore has graciously agreed to continue to coordinate the parties' discovery efforts in the two courts.

85). In the Scheduling Order, the court required the parties to submit their privilege logs, objections, and submissions for *in camera* review. (*Id.*). However, after modifying the scheduling order several times (*see* Docs. # 86, 88, 91) the parties requested additional guidance from the court. The court held another status conference on April 15, 2020. (*See* Doc. # 92). During the conference, the court provided the parties with guidance and allowed the parties to file all documents submitted to the court under seal. (Docs. # 93, 94, 95). The parties once again submitted updated privilege logs and sealed documents for *in camera* review.[3] (Docs. # 92 at 20; 93-6). The parties also submitted an updated status report, which further narrowed the documents that will require the court's review. (Doc. # 93-6).

The court has reviewed Ms. Cochran's and L.E. Bell's respective privilege logs and *in camera* submissions, as well as all initial and supplemental objections. (Docs. # 93, 94, 95). After careful consideration, the court makes the following rulings.

## II.   Standard of Review

The briefing, privilege logs, and submissions for *in camera* review concern whether the documents submitted by Ms. Cochran and L.E. Bell are protected by the: (1) attorney-client privilege; (2) work-product doctrine (Rule 26(b)(3)); and (3) common interest doctrine. Before analyzing these matters, the court provides a brief overview of each privilege asserted.

### A.  The Attorney Client Privilege

The attorney-client privilege applies to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1262 (11th Cir. 2008)

---

[3] Initially, the parties provided the privilege logs and *in camera* submissions to the court informally (via e-mail). However, at the April 15, 2020 status conference the parties asked for permission to place all *in camera* submissions in the record. The court granted the parties' request and their submissions were filed in the court's docket under seal. (Docs. # 93, 94, 95).

(quotation omitted). "The purpose of the privilege is 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334 (11th Cir. 2018) (quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989).

The party invoking the attorney-client privilege bears the burden of establishing that (1) an attorney-client relationship existed and (2) that a confidential communication was made to or from (3) an attorney who had been retained for the purpose of securing legal advice or assistance. *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). "Neither the existence of an attorney-client relationship nor the mere exchange of information with an attorney make out a presumptive claim." *In re Vioxx Products Liab. Litig*., 501 F. Supp. 2d 789, 799 n.15 (E.D. La. 2007) (quoting Paul R. Rice, 2 *Attorney-Client Privilege in the United States*, § 11:9, pp. 78-79 (Thomson West 2d ed.1999)).

To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must show the communication was (1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential. *United States v. Bell*, 776 F.2d 965, 971 (11th Cir. 1985). The attorney-client privilege is not absolute. And, because it "serves to obscure the truth, . . . [the privilege] should be construed as narrowly as it is consistent with its purpose." *United States v. Suarez*, 820 F.2d 1158,1160 (11th Cir. 1987).

**B.  Work Product Doctrine and Federal Rule of Civil Procedure 26(b)(3)**

The work product doctrine was recognized by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495 (1947) and is now codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection to "documents and tangible things . . . prepared in anticipation of

4

litigation or for trial" by or for a party, or by or for a party's representative. *Freiermuth v. PPG Indus., Inc.*, 218 F.R.D. 694, 700 (N.D. Ala. 2003). "The burden of establishing that a document is work product is on the party who asserts the claim." *Id.*

Rule 26(b)(b)(3) provides:

**(3) *Trial Preparation: Materials.***

**(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

**(i)** they are otherwise discoverable under Rule 26(b)(1); and

**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

**(C)** *Previous Statement*. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

**(i)** a written statement that the person has signed or otherwise adopted or approved; or

**(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

Fed. R. Civ. P. 26(b)(3) (emphasis in original). "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 679 (N.D. Ala. 2015) (citing *Hickman*, 329 U.S. at 510–12). "[T]he general policy against invading the privacy of an attorney's course of

preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Id.*

"But [again] the protection afforded to work product is not absolute. Discovery may be had into factual work product upon a party showing 'substantial need for the materials to prepare its case' and that it 'cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Drummond*, 885 F.3d at 1335 (quoting Fed. R. Civ. P. 26(b)(3)). "Greater protection is given to the attorney's opinion work product—that is, materials containing 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Id.* Opinion work product "'enjoy[s] a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'" *Id.* (quoting *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994).

### C.  Common Interest Doctrine[4]

The common interest doctrine is actually an exception to waiver of the attorney-client privilege rather than a privilege itself. *See, e.g., Hope For Families & Comty Serv., Inc. v. Warren*, No. 3:06–CV–1113–WKW, 2009 WL 1066525, at *7 (M.D. Ala. April 21, 2009) ("'Although occasionally termed a privilege itself, the common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person.'") (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir.2007)). "'[T]he common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications

---

[4] L.E. Bell's privilege log cites to both the "common interest doctrine" and the "joint defense doctrine." (Doc. # 95-5). Because the court can find no meaningful difference between the two, the court analyzes both under the common interest doctrine framework.

made to further an ongoing enterprise.'" *Id*. at * 8 (citing *Seidman*, 492 F.3d at 815-16). As the Eleventh Circuit has noted, "'[t]he need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter.'" *United States v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243-44(2d Cir.1989))."The party claiming the [common interest] privilege must demonstrate that '(1) the material is privileged, (2) "the parties had an identical legal and not solely commercial interest," and (3) the communication was designed to further the shared legal interest.'" *In re Androgel Antitrust Litig*. (No. II), No. 1:09-MD-2084-TWT, 2015 WL 9581828, at *2 (N.D. Ga. Dec. 30, 2015) (quoting *Net2Phone, Inc. v. Ebay, Inc.*, No. 06–2469 KSH, 2008 WL 8183817, at *7 (D.N.J. June 26, 2008) (citations omitted), in turn quoting *In re Regents of Univ. of Cal*., 101 F.3d 1386, 1390 (Fed. Cir. 1996))).

The proponent of the common interest doctrine must establish that "the act of sharing was part of an ongoing common legal enterprise" as opposed to a "joint business strategy which happens to include as one of its elements a concern about litigation." *See Spencer v. Taco Bell, Corp*., No. 8:12-cv-387-T-23TBM, 2013WL 12156093,at*2-3 (M.D. Fla. Apr. 23, 2013) (quoting *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust*, No. 1B, 230 F.R.D. 398,416 (D. Md. 2005), and *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A*., 160 F.R.D. 437, 447 (S.D.N.Y. 1995)); *see also Del Monte Int'l GMBH v. Ticofrut, S.A*., No. 16-23894-CIV, 2017 WL 1709784, at *7 (S.D. Fla. May 2, 2017). "'Although the distinction between a common legal, as opposed to commercial, interest is somewhat murky, a common legal interest has been defined as one in which the parties have been, or may potentially become, co-parties to a litigation ... or have formed a coordinated legal strategy.'" *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, No. 13 Civ. 8997 JPO GWG,2015 WL 3450045, at *3 (S.D.N.Y. May 28,

2015)(*quoting In re Subpoena Duces Tecum Served on N.Y. Marine & Gen. Ins. Co.*, No. M 8-85

MHD, 1997 WL 599399, at *4 (S.D.N.Y. Sept. 26, 1997) (citations and internal quotation marks

omitted)).

## III.   Analysis

The court first addresses L.E. Bell's privilege log and Ms. Cochran's objections. The court

then turns to Ms. Cochran's privilege log and L.E. Bell's objections

### A.  L.E. Bell's Privilege Log and Glenda Cochran's Objections

The parties are at an impasse regarding the following entries on L.E. Bell's privilege log:

(1) Steve Barker's NTSB presentation outline; and (2) certain e-mails, diagrams, and related notes.

(Doc. # 93-6 at ¶ 5). The court addresses each, in turn.

#### i.   Steve Barker's NTSB Presentation Outline (Bates Label # 405)

L.E. Bell asserts that Steve Barker's presentation outline and attachments are privileged

under the attorney-client privilege and Rule 26(b)(3). Because the attachments were produced, the

only document at issue is the presentation outline, Bates Label 405. (Doc. # 95-5 at 8). Ms. Cochran

contends the item labeled "presentation outline and attachments" was shared with a third-party,

thus destroying the claimed privilege. However, L.E. Bell's privilege log states "Steve Barker['s]

NTSB presentation outline [was] prepared with counsel and not shared with the NTSB and

attachments (attachments were produced)." (Doc. # 95-5 at 8).

The court has reviewed the presentation outline and has determined that the presentation

outline is attorney work product because it was "prepared in anticipation of litigation or for trial

by or for another party or its representative (including the other party's attorney, consultant, surety,

indemnitor, insurer, or agent). Fed. R. Civ. P. 26(b)(3). Further, the court is satisfied (at least at

this point) that the document was not shared with the NTSB, OSHA, or any other-third parties.[5] Therefore, L.E. Bell will not be required to produce the document, designated Bates Label 405.

### ii. Diagrams and Related Notes (Bates Labels # 341-43, 344-46, 391-92, 393-95, 454, 456-63, 486-89, 490-94)[6]

#### 1. E-mails, Diagrams, and Attorney Notes (Bates Labels # 341-43, 344-46, 393-95, 486-89, 490-94)

L.E. Bell claims that these documents (consisting of e-mails, diagrams, and related notes) are privileged pursuant to attorney client privilege and Rule 26(b)(3). Ms. Cochran believes these diagrams were shared with the NTSB and/or OSHA. However, on its updated privilege log, L.E. Bell represents that these documents were not provided to the NTSB, OSHA, or any other third-party.

The court has reviewed the documents with Bates Labels 341-43, 344-46, 393-95, 486-89, 490-94, and has determined that these documents qualify as attorney work product because they were prepared in anticipation of litigation or for trial by a party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). Fed. R. Civ. P. 26(b)(3). Further, nothing in these documents indicates they were shared with the NTSB, OSHA, or any other third-parties. Therefore, L.E. Bell will not be required to produce the documents with Bates Labels 341-43, 344-46, 393-95, 486-89, 490-94.

#### 2. E-mail and Attached Diagram (Bates Labels # 391-92)

L.E. Bell asserts that the e-mail and attached diagram are privileged pursuant to the

---

[5] Of course, if information discovered later shows that the outline was in fact disclosed to the NTSB, OSHA, or any other third-party, the court will re-visit this ruling.

[6] These documents were listed on L.E. Bell's privilege log, but were not previously provided to the court for *in camera* review. On July 28, 2020, the court held a telephonic status conference and requested the following Bates Labeled documents from L.E. Bell: 341-43, 344-46, 393-95, 486-89, 490-94. The court also requested that L.E. Bell update its privilege log and identify if any of the documents requested were started with the NTSB, OSHA, or any other third-party. (Docs. # 97, 98).

attorney client privilege and Rule 26(b)(3). Ms. Cochran believes these diagrams were shared with the NTSB and/or OSHA. However, as the privilege log indicates, the parties to the e-mails were Rob Robinson (L.E. Bell), Sean Shirley (Balch), and Keith Campbell (L.E. Bell). Nothing in the text of the e-mails, or the attached diagram, indicates that the e-mail or the attachment was shared with NTSB and OSHA.

The court has reviewed the e-mail and attached outline and has determined that these documents qualify as attorney work product because they were prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). Fed. R. Civ. P. 26(b)(3). Further, nothing in the e-mail or the attachment indicates that these documents were shared with the NTSB, OSHA, or any other third-parties. Therefore, L.E. Bell will not be required to produce the document with Bates Labels 391-92, at this time.

### 3. Diagram with Handwritten Notes (Bates Label # 454-55)

The documents with Bates Labels 454-55 were previously listed on L.E. Bell's privilege log. However, on its August 3, 2020, *in camera* submission, L.E. Bell informed the court that these documents were provided to OSHA in February 2017. Further, L.E. Bell stated this document was already produced in the *Delaughder* case, and was inadvertently placed on the privilege log. L.E. Bell has removed the document from its privilege log.

### 4. E-mail and Attached Diagram (Bates Labels # 456-63)

L.E. Bell asserts that a computer diagram, attached to an e-mail, is privileged under the attorney client privilege and Rule 26(b)(3). Ms. Cochran believes this diagram was shared with the NTSB and/or OSHA. L.E. Bell's privilege log indicates, the parties on the e-mail were Sean Shirley (Balch), Rob Robinson (L.E. Bell), and Keith Campbell (L.E. Bell). The subject line of the

e-mail indicates that this e-mail was sent from Campbell to Shirley in response to a request for information from OSHA. However, the e-mail does not state that the attached documents were actually disclosed to OSHA.

The court has reviewed the e-mail and attached diagram and concludes that these documents are privileged pursuant to the attorney client privilege. Further, in its August 3, 2020 *in camera* submissions, L.E. Bell explicitly stated that all documents disclosed to the NTSB and OSHA have already been produced in this litigation. Therefore, L.E. Bell is not required to produce the documents with bates labels 456-63.[7]

### B.  Ms. Cochran's Privilege Log and L.E. Bell's Objections

The parties are also at an impasse regarding the following entries on Ms. Cochran's privilege log: (1) Ms. Cochran's recordings of her phone calls with Steve Barker; (2) the transcripts (both the redacted and non-redacted transcripts)[8] of Ms. Cochran's recording of three phone calls with Barker; (3) Ms. Cochran's and Attorney Matt Moneyham's redacted notes regarding their meetings and conversations with Steve Barker and Kerry Conkle;[9] (5) Ms. Cochran's redacted communications and correspondence regarding her meetings and conversations with Steve Barker. (Doc. # 93-6 at ¶¶ 6-8). The court addresses each objection, in turn.

### i.  Recordings of Phone Calls with Steve Barker (Bates Labels # 197-99)

L.E. Bell maintains that Ms. Cochran's recordings of her three phone calls with Steve Barker are not privileged as a matter of law. Ms. Cochran maintains that these recordings are

---

[7] Of course, the court reserves the right to amend its ruling if Ms. Cochran later presents information to the contrary.

[8] The redacted transcripts were produced by L.E. Bell and are located on CM/ECF. (Docs. # 95-3, 95-4).

[9] The redacted attorney notes were produced by L.E. Bell and are located on CM/ECF. (Docs. # 95-3, 95-4).

protected from disclosure by the work product doctrine. This issue has been briefed extensively.[10]

Because these issues have been briefed ad nauseum, the court focuses its analysis on the summaries

provided by the parties in their April 23, 2020 joint status report. (Doc. # 93-6). First, L.E. Bell

argues that the recorded calls are not Ms. Cochran's work product because the statements

themselves are discoverable under Federal Rule of Civil Procedure 26(b)(3)(C). Rule 26(b)(3)(C)

states:

> Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:
>
> **(i)** a written statement that the person has signed or otherwise adopted or approved; or
>
> **(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

Under Rule 26(b)(3)(C), L.E. Bell maintains that Barker has the right to obtain Ms. Cochran's

recordings and transcripts of their conversations, and then L.E. Bell can subpoena the transcripts

---

[10] L.E. Bell has extensively argued that the "crime-fraud exception" applies to Ms. Cochran's claims of privilege, and the court should order disclosure of the recordings (and all of the documents over which Ms. Cochran claims privilege) on this basis. "The crime-fraud exception allows a party—in rare circumstances—to obtain discovery that otherwise would be protected by the attorney-client privilege or the attorney work product doctrine." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018). As the Eleventh Circuit state, the crime-fraud exception applies when a two-part test is satisfied:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987). Although, L.E. Bell argues that Ms. Cochran has committed a crime (and, alternatively, a fraud on the court), L.E. Bell has only provided the court with allegations of Ms. Cochran's purported wrongdoing. No actual evidence has been produced that is sufficient to meet the first prong of this test. *Id.* (stating that a prima facie "showing must have some foundation in fact, for mere allegations of criminality are insufficient to warrant application of the exception."). Of course, this does not mean that L.E. Bell will not have the opportunity to make the requisite crime fraud showing *in the future*. But, having said that, the court is still in the same place it was during the April 15, 2020 telephone conference: it currently has serious doubts about the applicability of the crime-fraud exception. (Doc. # 92 at 6). If L.E. Bell wishes to raise the crime fraud argument again, it may do so in a later motion.

12

and recordings. (Doc. # 95-1 at 1).

L.E. Bell's arguments are well-taken, but the court has determined that the recordings of Ms. Cochran's phone calls (at least at this early stage) are protected by the qualified privilege of Rule 26(b)(3). According to Rule 26(b)(3)(A)(ii), the recordings of Ms. Cochran's calls with Barker are only discoverable if "[L.E. Bell] shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." This court has previously stated that a party does not have a substantial need for verbatim non-party witness recordings or transcripts if the requesting party has the opportunity to interview or depose the witness. *Giraldo v. Drummond Co.*, No. 2:09-CV-01041-RDP, 2012 WL 2358297, at *3 (N.D. Ala. June 15, 2012) (stating that "under 'normal' circumstances, the fact that Defendants thereafter had the opportunity to question the third[-]party witness would close the book on the matter and prevent disclosure."). From the outset, the court has stated that all parties (including parties for the cases pending in state court) involved in this consolidated litigation will have the opportunity to depose Barker. Thus, the court is "clos[ing] the book on this matter." *Giraldo*, 2012 WL 2358297, at *3.

Second, L.E. Bell has acknowledged there is no binding precedent from the Eleventh Circuit that is directly on point that requires disclosure of the recordings.[11] (Doc. # 92 at 8-9).

---

[11] L.E. Bell does acknowledge that the ABA previously prohibited attorneys from secretly recording conversations with third parties (*i.e.*, clandestine recordings). *See* ABA Committee on Professional Responsibility, Formal Opinions, No. 337 (1974). When the ABA prohibition on clandestine recordings was in effect, the Eleventh Circuit addressed an issue similar to this in *Parrot v. Wilson*, 707 F.2d 1262, 1271-71 (11th Cir. 1983). In *Parrot*, the Eleventh Circuit held "that whatever work product privilege might have existed was vitiated by counsel's clandestine recording of conversations with witnesses." *Id.* (internal footnote omitted). However, the ABA withdrew its ethical prohibition on clandestine recordings in 2001. *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-422 (2001). Since the ABA opinion was withdrawn, the Eleventh Circuit has expressly refrained from determining whether an attorney who clandestinely records a conversation acts unethically. *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1338 n.10 (11th Cir. 2018) ("We express no opinion whether an attorney who makes a clandestine recording today acts unethically.").

Apparently recognizing this deficiency, L.E. Bell cites the court to several cases from federal district courts in Louisiana. (Doc. # 95-1 at 3) (citing *Brown v. Praxair, Inc.*, No. CV 17-384-BAJ-RLB, 2018 WL 5116499, at *5 (M.D. La. Oct. 19, 2018) (holding that "[clandestine] recordings do not qualify for work product protection, and must be produced before the depositions of the pertinent witnesses; *Williams v. Gunderson Rail Servs., LLC*, No. 07-0887, 2008 WL 145251 (W.D. La. Jan. 14, 2008) (holding that the plaintiff's clandestine recordings of co-workers did not qualify for work product protection and must be disclosed prior to the depositions of the recorded individuals); and *In re Shell Oil Refinery*, 144 F.R.D. 75, 77 (E.D. La. 1992) (holding that counsel was required to turn over clandestine recording of a non-party fact witness, and stating that the fact that the third-party witness would likely turn over his own statement to plaintiff's counsel was no justification for defendant's refusal to provide the statement).

The court declines to adopt the rationale of the Eastern, Western, and Middle Districts of Louisiana. As previously stated, there is no binding Eleventh Circuit precedent directly on point. Further, L.E. Bell has failed to cite any cases from courts in the Northern District of Alabama, or from district courts within the Eleventh Circuit, that require disclosure of Ms. Cochran's conversations with Barker at this early stage. To be clear about what this ruling does not mean: the court does not conclude that the recordings will never be turned over to L.E. Bell. Rather, at this early juncture, L.E. Bell has not shown that disclosure of them is warranted. Further, the court notes that Ms. Cochran has provided L.E. Bell with redacted transcripts, as well as explanations for all redacted information. Although the transcripts are redacted heavily, the court concludes Ms. Cochran's good-faith effort to produce all "fact discovery" is sufficient at this point in time.

Finally, L.E. Bell argues that "because [it] will ultimately have the procedural means to obtain the recordings and transcripts, the [c]ourt should order them produced now." The court does

not think it is necessary to the remind the parties that just because certain information *ma*y be discoverable in the future, that does not mean that it actually is necessarily discoverable now. The count will not require Ms. Cochran to produce the full recordings of her conversation with Steve Barker at this time.

ii.   **The Transcripts of Ms. Cochran's Phone Calls with Steve Barker (Bates Labels # 143-49, 36-48, 1-14)**

Ms. Cochran's privilege log includes both a clean transcript and a redacted transcript. The redactions are designed to protect counsel's mental impressions regarding discovery needs, litigation strategy, and evidence. L.E. Bell argues that these transcripts are not privileged and should be produced in full.

As discussed above (in relation to Ms. Cochran's recordings), L.E. Bell has not shown "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Also, it is important to note that Ms. Cochran provided L.E. Bell with a redacted transcript of her phone calls with Barker, as well as a document listing her rationale for the redactions. (Doc. # 95-2, 95-3, 95-4). Although L.E. Bell is not satisfied with Ms. Cochran's redactions, after reviewing the full unredacted transcripts, the court is satisfied that Ms. Cochran has made a good faith effort to provide L.E. Bell with all information that could be considered "fact discovery." As previously stated, opinion work product "'enjoy[s] a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'" *Drummond*, 885 F.3d at 1335 (quoting *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994). Thus, at this point, the court will not require Ms. Cochran to produce the unredacted transcripts of her conversations with Steve Barker.

### iii. Ms. Cochran's and Matt Moneyham's Redacted Notes Regarding Their Meetings and Conversations with Steve Barker and Kerry Conkle (Bates Labels #119-133, 134-38)

Ms. Cochran's privilege log contains both a redacted copy of the notes (which was provided to L.E. Bell), and an unredacted copy. L.E. Bell asserts that the redacted portions of the notes are not privileged to the extent that they actually reflect statements made by the parties to the conversations. Further, Ms. Cochran maintains that these notes reflect counsels' mental impressions and litigation strategy.

As discussed above (in relation to Ms. Cochran's recordings of her calls with Barker), L.E. Bell has not shown "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Again, although L.E. Bell is not satisfied with the redacted versions of the notes, after reviewing the full unredacted transcripts, the court is satisfied that Ms. Cochran has made a good faith effort to provide L.E. Bell with all information that could be considered "fact discovery." The court will not require Ms. Cochran to produce Bates Labels 119-133, 134-38, at this time.

### iv. Ms. Cochran's Redacted Communications and Correspondence Regarding her Meetings and Conversations with Steve Barker (Bates Labels # 196, 55, 53, 179)

Ms. Cochran claims her communications and correspondence regarding her meetings and conversations with Barker are privileged. L.E. Bell asserts that the portions of the communications and correspondence are not privileged to the extent they reflect statements made by the parties during the conversations and meetings.

First, the court concludes that Bates Labels 55 and 179 are actually the same e-mail. L.E. Bell produced a redacted copy of that e-mail. (Doc. # 95-3 at 43). After reviewing the redacted e-

mail and an unredacted copy of the e-mail, the court concludes that Ms. Cochran's redactions are appropriate, and are necessary to protect communications between counsel.

Second, the court concludes that Bates Label 53 is privileged, as it reflects communications between attorneys reflecting counsels' mental impressions and litigation strategy.

Third, Bates Label 196 was previously listed Ms. Cochran's revised privilege log, but was not provided to the court for *in camera* review. (Doc. # 93-5). On July 29, 2020, the court ordered Ms. Cochran to produce the document with Bates Label 196 for *in camera* review. On July 31, 2020, Ms. Cochran informed the court that she provided L.E. Bell's counsel with document 196 and removed it from her privilege log.

## IV.   Conclusion

To summarize, the court has concluded that all documents submitted by the parties for *in camera* review are privileged. Neither party is required to disclose any documents listed on their respective privilege logs at this time. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this August 4, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE