FILED
2021 Apr-01 PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN CHRISTOPHER COVEY, | }<br>} |
| Plaintiff, | }<br>} |
| v. | } Case No.: 2:18-CV-01121-RDP<br>} |
| COLONIAL PIPELINE COMPANY, et al., | }<br>}<br>} |
| Defendants. | } |

| | |
|---|---|
| HUGH GERALD DELAUGHDER, JR., et al., | }<br>}<br>} |
| Plaintiffs, | }<br>} |
| v. | } Case No.: 2:19-CV-923-RDP<br>} |
| COLONIAL PIPELINE COMPANY, et al., | }<br>}<br>} |
| Defendants. | } |

| | |
|---|---|
| BEVERLY KAY WILLINGHAM, Individually and as Administratrix of the Estate of ANTHONY LEE WILLINGHAM, deceased, | }<br>}<br>}<br>}<br>} |
| Plaintiffs, | }<br>} |
| v. | } Case No.: 2:19-CV-01507-RDP<br>} |
| COLONIAL PIPELINE COMPANY, et al., | }<br>}<br>} |
| Defendants. | } |

**MEMORANDUM OPINION**

Before the court is a Motion for Reconsideration and/or Clarification filed by Glenda G. Cochran and Glenda Cochran Associates, LLC (collectively, "Cochran"). (Doc. # 141). In that Motion, Cochran requests the court to revisit its January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125) and (1) reconsider whether attorney's fees were warranted as a sanction against her because there was no finding that she acted in bad faith and (2) clarify that she did not receive work product of such a nature that would require her disqualification. (Doc. # 141). In its response to Cochran's Motion to Reconsider (*id.*), Defendant L.E. Bell filed an alternative Motion to Reconsider Order Declining to Disqualify Cochran in which L.E. Bell requests the court modify its January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125) and disqualify Cochran. (Doc. # 148). Those Motions have been briefed and are ripe for consideration. (Docs. # 141, 148, 149).

**I.    Standard of Review**

"A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003); *see Fox v. Tyson Food, Inc.*, 2007 WL 6477624, at *1 (N.D. Ala. Aug. 31, 2007) (same). The grant or denial of a motion to reconsider is left to the discretion of the district court. *See Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000). However, reconsideration is "an extraordinary remedy which must be used sparingly." *Jackson v. Wesley*, 2011 WL 2144696, *1 (M.D. Fla. May 31, 2011); *see Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. 2010) (quoting *Gougler v. Sirius Products, Inc.*, 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005)) ("In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly."). As other courts have

acknowledged:

> Far too often, litigants operate under the flawed assumption that any adverse ruling ... confers upon them license to move for reconsideration, vacatur, alteration or amendment as a matter of course, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a "do-over" to erase a disappointing outcome. This is improper.

*Garrett*, 2010 WL 320492 at *2.

## II.     Analysis

The court held oral argument on these Motions, along with L.E. Bell's Motion to Certify Questions Regarding Standards for Disqualification for § 1292(b) Appeal (Doc. # 136), on March 23, 2021. Although, ultimately, both motions are due to be denied because they lack merit, upon further review of the record and after considering events in the parallel state proceedings and the arguments raised at the March 23, 2021 hearing, the court finds it necessary to revisit the sanctions it imposed on Cochran. (Docs. # 124, 125).

### A.     Cochran's Request for Reconsideration

Cochran first asserts that the court erred in its January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125) because the court sanctioned Cochran without finding that Cochran acted in bad faith. (Doc. # 141 at 4-9). According to Cochran, a federal court cannot sanction a litigant without first finding that litigant acted in bad faith. (*Id.*). As support for this proposition, Cochran cites only to cases in which a litigant was sanctioned under either the court's inherent powers or 18 U.S.C. § 1927.[1] *See, e.g.*, *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) ("A sanctions motion under either a court's inherent powers or § 1927 requires a showing that the party acted in bad faith."); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (citations

---

[1] The text of 28 U.S.C. 1927 permits courts to sanction attorneys who "multipl[y] the proceedings in any case unreasonably and vexatiously."

omitted) ("Hence, before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'"); *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018) (stating that before sanctioning a party pursuant to its inherent authority, a court "must make a finding that the sanctioned party acted with subjective bad faith.").

To be clear, in sanctioning Cochran, the court relied on neither its inherent power nor § 1927. Federal Rule of Civil Procedure 83 and 28 U.S.C. § 2071 each provide authority for federal courts to adopt local rules for the proper administration of judicial business. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1479 (9th Cir. 1989). And, pursuant to Local Rule 83.1(f), attorneys appearing before this court are governed by the Alabama Rules of Professional Conduct ("Alabama Rules") to the extent the Alabama Rules are not inconsistent with the court's local rules. Therefore, in a case involving an alleged violation of the Alabama Rules, it is the text of the Alabama Rules that governs the applicable standard — not a bad faith standard imposed by common law. *See, e.g., Matter of Hawk*, 2016 WL 7157977, at *9 (N.D. Ga. Dec. 6, 2016) (citations omitted) ("Importantly, [Georgia] Rule 5.3 does not require that an attorney be aware of his or her assistant's misconduct because violations of this rule rest on the lawyer's supervisory failures, not upon participation in or knowledge of the assistant's misconduct. Thus, a lawyer may violate [Georgia] Rule 5.3 through negligent supervision.").

The court's opinion concluded that Cochran violated Alabama Rules 4.4(a), 4.4(b), and 5.3(b) by obtaining confidential information subject to the work-product privilege. (Doc. # 124). As such, the language of those rules determines the applicable ethical standard. And, the language in none of those rules imposes a bad-faith standard. *See* Alabama Rule 4.4(a) (barring attorneys from "us[ing] means that have no substantial purpose other than to embarrass, delay, or burden a

4

third person, or us[ing] methods of obtaining evidence that violate the legal rights of such a person"); Alabama Rule 4.4(b) (requiring any "lawyer who receives a document that on its face appears to be subject to the attorney-client privilege or otherwise confidential[ ] and who knows or reasonably should know that the document was inadvertently sent [to] promptly notify the sender"); Alabama Rule 5.3(b) (requiring a lawyer who has "direct supervision" over a nonlawyer to make "reasonable efforts to ensure that the [nonlawyer]'s conduct is compatible with the professional obligations of the lawyer").[2] Therefore, with regard to the first issue, Cochran has failed to show "an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center of Alabama, Inc.*, 284 F. Supp. 2d at 1355.[3]

Cochran next requests that the court "(1) [specify] exactly what information that … was actually shared by Barker with Cochran, and (2) [clarify] that [information] did not include anything that qualifies as the type of 'confidential' work product that would give Cochran any unfair advantage in this litigation or otherwise require her disqualification." (Doc. # 141 at 10).

The rationale and nature of the two clarification requests are essentially the same — in light of Defendant L.E. Bell's petition for mandamus (currently pending before the Eleventh Circuit) in which L.E Bell asserts the court applied the wrong legal standard in its January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125), Cochran believes that the court could

---

[2] In reviewing an ethical rule similar to Alabama Rule 4.4(a), at least one court has concluded the applicable standard is one of due care. See *Calise v. Brady Sullivan Harris Mills, LLC*, No. 18-9WES, 2019 WL 1397245, at *9 (D.R.I. Mar. 28, 2019) (concluding a rule similar to Alabama Rule 4.4(a) imposes "an affirmative duty to proceed with due care").

[3] Along similar lines, Cochran cites a line of cases holding "inadvertent exposure to work product can rarely, if ever, serve as the basis for disqualification." (Doc. # 141 at 15-17). Not only do these cases have little bearing on this matter (because the court did not disqualify Cochran), these cases are also irrelevant because Cochran's exposure to work product was brought about, not by inadvertence, but rather by her negligence in failing to act with due care. (Doc. # 124 at 20-21).

5

preempt "any confusion on the part of the Eleventh Circuit" by acknowledging that her ethical violations were de minimis. (Doc. # 141 at 10).[4] But, in doing so, Cochran repeats the same arguments she made in her briefing on the disqualification motion (*e.g.*, Barker testified he did not share any confidential information, no harm occurred because Cochran already knew the causation theories that Barker shared with her, Barker developed causation theories of his own accord). (*Id.* at 9-18). As other courts have noted, such an attempt "to relitigate issues that have already been decided … is improper." *Garrett*, 2010 WL 320492, at *2.

But, Cochran's arguments would fail regardless. Although Barker testified he "would not have told [ ] Cochran … [ ] what [an attorney for L.E. Bell] said at any point," (Doc. # 116-15 at 187:25-188-2), whether Barker, a non-lawyer, stated he did not provide Cochran with information he discussed with attorneys is not determinative of whether Barker did, in fact, provide Cochran with information protected by work-product privilege.[5] And, whether Cochran developed causation theories before meeting with Barker is irrelevant to whether L.E. Bell was prejudiced by Cochran being able to confirm L.E. Bell's litigation strategy.[6] Lastly, Barker's involvement with L.E. Bell's legal team is more extensive than asserted by Cochran in her Motion to Reconsider. As

---

[4] Cochran maintains that these clarifications would also help "avoid protracted wrangling over discovery as now threatened by L.E. Bell." (Doc. # 141 at 10). But, Cochran does not explain how the court clarifying the extent and nature of Cochran's ethical violations in the past could help the parties with discovery disputes in the future. Furthermore, to be clear to all parties, there will not be any protracted wrangling over discovery in this case.

[5] Cochran also argues she was not exposed to any material protected by work-product privilege because "there is no evidence that Barker ever attributed any of the various 'causation theories' to counsel for L.E. Bell (or any other counsel)." But, the work-product doctrine protects work product created by non-attorneys at the direction of an attorney. *See* 8 Wright & Miller, Fed. Prac. & Proc. Civ. § 2024 (3d ed. 2010) (stating that despite the text of Rule 26(b)(3), the work-product privilege doctrine "continues to furnish protection for work product within its definition that is not embodied in tangible form"); *United States v. Nobles*, 422 U.S. 225, at 238-39 (1975) ("It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." (footnote omitted)). To the extent that Barker developed the causation theories at the request of L.E. Bell's legal team, those causation theories are protected by work-product privilege.

[6] As noted in the Memorandum Opinion, any prejudice appears nonexistent (or, at most, minimal) because the information was incomplete, L.E. Bell had not yet incorporated any purported causation theories into a trial strategy, and Cochran is not adverse to L.E. Bell in any pending fault-based litigation. (Doc. # 124 at 21).

stated in the Memorandum Opinion: "Not only did Barker work with L.E. Bell in gathering and analyzing facts later provided to OSHA and the NTSB, he also worked with L.E. Bell's legal counsel, employees of L.E. Bell, and outside consultants to develop theories of what caused the explosion and who might be legally responsible." (Doc. # 124 at 4). Because Cochran's legal arguments are without merit, she has failed to show the necessary "need to correct clear error or manifest injustice." *Summit Medical Center of Alabama, Inc.*, 284 F. Supp. 2d at 1355.

For all these reasons, Cochran's request for reconsideration is due to be denied.

**B.     L.E. Bell's Request for Reconsideration**

L.E. Bell's request that the court reconsider Cochran's disqualification fares no better. L.E. Bell maintains that the court's factual findings in its January 25, 2021 Memorandum Opinion and Order (Doc. # 124) required the court to disqualify Cochran. (Doc. # 148 at 18-24). L.E. Bell repeats the same arguments that it has raised before: (1) the pertinent disqualification standard for Alabama Rule 4.4, as set forth in *Martinez v. Cty of Antelope, Nebraska*, 2016 WL 3248241 (D. Neb., June, 13, 2016), requires disqualification; (2) Alabama Rules 1.9(a) and 5.3(b) require disqualification if a party improperly obtains information protected by work-product privilege; and (3) prejudice is presumed whenever a party improperly obtains information protected by work-product privilege. (Doc. # 148 at 18-24).

Because the court has already rejected all of these arguments, L.E. Bell's attempt "to relitigate issues that have already been decided … is improper." *Garrett*, 2010 WL 320492, at *2. But, as with Cochran's motion to reconsider, L.E. Bell's arguments fail regardless as a matter of law.

Precedent, both binding and persuasive, clearly holds that violation of an ethical rule does not require a court to grant a disqualification motion; indeed, whether disqualification is

7

appropriate depends on the underlying violation. *See Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (applying Florida law) (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)) ("A disqualification order is a harsh sanction, often working substantial hardship on the client and should therefore be resorted to sparingly.") (internal quotation marks omitted); *Norton*, 689 F.2d at 941 (acknowledging that a violation of Canon 9 of Florida's Code of Professional Responsibility should not automatically give rise to disqualification); *Clark v. Alfa Ins. Co.*, 2001 WL 34394281, at *3 (N.D. Ala. Feb. 7, 2001) ("Upon [finding a party violated an applicable rule of conduct], the court may then, considering binding and persuasive federal case law, decide whether or not the ethical lapse warrants disqualification."); *Nuri v. PRC, Inc.*, 5 F. Supp. 2d 1299, 1304 (M.D. Ala. 1998) (citations omitted) ("[V]iolations come in varying degrees of severity, but disqualification is always a drastic measure, which courts should hesitate to impose except when absolutely necessary."). A review of the record shows disqualifying Cochran here is too harsh a remedy. The January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125) concluded that Cochran violated the Alabama Rules by receiving confidential work product from Barker and by not taking remedial steps to remedy that receipt as well as by hiring Barker as a consultant without taking "reasonable efforts" to ensure that consulting relationship conformed to the ethical obligations of the profession. But, the court found those ethical violations were not due to bad faith and caused L.E. Bell minimal -- if any -- prejudice. (Doc. # 125 at 19-21). Cochran testified (and it is undisputed) that she took some steps to ensure that she did not learn confidential information from Barker, including by expressly telling him not to tell her anything that L.E. Bell's lawyers had said in his presence. (Doc. # 119-2 ¶ 25-26). Although such measures were ultimately insufficient with regard to work-product privilege, those measures evidenced an intent to abide by the Alabama Rules and not an

intent to harm L.E. Bell or any other party to this litigation. And, as repeatedly pointed out by the court, Cochran has no pending claims against L.E. Bell other than those raised in the no-fault worker's compensation case pending in state court. In light of the record, L.E. Bell has failed to provide the court with a compelling reason for Cochran's disqualification. *See In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) ("Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist.").

L.E. Bell's last point is that prejudice must be assumed whenever counsel for a party obtains confidential information from another party. (Doc. # 148 at 21-24). Like L.E. Bell's other points, the court has already considered and rejected this argument. (Doc. # 125 at 19 n.13). In instances where a party wrongfully obtains confidential information, courts within this circuit have often looked to whether the party originally in possession of that information incurred prejudice to determine appropriate sanctions. *See, e.g.*, *Nuri*, 5 F. Supp. 2d at 1305. L.E. Bell has not provided the court with any convincing reason to deviate from this case law and presume prejudice.

For all these reasons, L.E. Bell's request for reconsideration is due to be denied.

### C. The Sanctions Imposed on Cochran are Due to be Revisited

Based upon the arguments advanced during the March 23, 2021 hearing and also in consideration of Judges Moore and Conwill's rulings on these matters, the court finds it necessary to revisit the monetary sanctions imposed on Cochran by the January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125). Though Judges Moore and Conwill adopted a portion of the court's January 25, 2021 Memorandum Opinion, they did not adopt the part of the Order that relates to sanctions. *See Webster v. Colonial Pipeline Co.*, No. 58-CV-2017-901175 (Shelby Cty. Ct. Ala.) (Doc. # 587); *Gentry v. Colonial Pipeline Co.*, No. 58-CV-2018-900789 (Shelby Cty. Ct. Ala.) (Doc. # 159); *Wright v. Colonial Pipeline Co.*, No. 58-CV-2018-901017 (Shelby Cty. Ct.

Ala.) (Doc. # 149). Judges Moore and Conwill are obviously very conversant with the Alabama Rules. So, their partial adoption of the court's Memorandum Opinion and Order has encouraged the court to review its analysis.[7] In particular, the court believes its analysis under Alabama Rules 1.9(a) and 5.3(b) is in need of revision. The court reconsiders this issue sua sponte. *See Cook v. Campbell*, 2008 WL 2039487, at *2 (N.D. Ala. May 12, 2008) (citing *Lavespere v. Niagara Machine & Tool Works*, 910 F.2d 167, 185 (5th Cir. 1990)) ("The rule in *Lavespere* permits the court 'to reconsider and reverse' an interlocutory order 'for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'").

Under Alabama Rule 5.3(b), a lawyer who has "direct supervision" over a nonlawyer must make "reasonable efforts to ensure that the [nonlawyer]'s conduct is compatible with the professional obligations of the lawyer." In other words, Alabama Rule 5.3(b) requires lawyers to ensure that nonlawyers under their supervision comply with the Alabama Rules. In its Amended Motion to Disqualify, L.E. Bell argued that Cochran violated Rule 5.3(b) by failing to ensure that Barker complied with Alabama Rule 1.9(a), which governs conflicts of interests. (Doc. # 116-1 at 48-50). And, under Alabama Rule 1.9(a), a lawyer who has formally represented a client may not "[r]epresent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation." L.E. Bell claimed that Barker, through his work on the L.E. Bell legal team, was barred from assisting Cochran under Alabama Rule 1.9(a) and that Cochran violated

---

[7] At the hearing, counsel for L.E. Bell seemed to assert that Judges Moore and Conwill "rubber-stamped" this court's analysis. For example, counsel noted that Judges Moore and Conwill have not had an opportunity to review the entire record, particularly the sealed portions of it. However, the court believes that its January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125) adequately and accurately portrayed the entire record in this case. Furthermore, a review of the Orders filed by Judges Moore and Conwill partially adopting the January 25, 2021 Memorandum Opinion shows Judges Moore and Conwill "reviewed the pleadings of record in the [state] cases and the pleadings of record in [the] related cases before [Judge Proctor]." *Webster*, No. 58-CV-2017-901175 (Doc. # 587 at 1); *Gentry*, No. 58-CV-2018-900789 (Doc. # 159 at 1); *Wright*, No. 58-CV-2018-901017 (Doc. # 149 at 1).

Alabama Rule 5.3(b) by failing to ensure that Barker complied with Alabama Rule 1.9(a). (*Id.*).

The court determined that "Barker's involvement in developing causation and liability theories for L.E. Bell [ ] exposed him to confidential information protected by work-product privilege" and "[b]ecause of that exposure, [Alabama] Rule 1.9(a) therefore prohibit[ed] Barker from assisting Cochran." (Doc. # 125 at 17-18). The court further determined that Cochran violated Alabama Rule 5.3(b) by failing to take reasonable efforts "to ensure that Barker was not violating [Alabama] Rule 1.9(a) or any other Rule by working for her as a consultant." (*Id.* at 18).

In making those determinations, the court assumed without actually deciding that L.E. Bell and Cochran were materially adverse for purposes of Alabama Rule 1.9(a). The parties did not brief the issue of material adversity. (Docs. # 116-1, 119, 120).[8] But, L.E. Bell placed great emphasis on this point at oral argument. After considering the arguments raised at the hearing conducted on March 23, 2021, the court now concludes: (1) L.E. Bell and Cochran's representation of Delaughder are not materially adverse under Alabama Rule 1.9(a), (2) Cochran did not violate Alabama Rule 5.3(b) by hiring Barker and learning causation theories from him, and (3) the court should revisit the issue of sanctions imposed on Cochran by the court's January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125).

Like other statutes and texts, interpreting Alabama Rule 1.9(a) begins with the text. Where the text is clear (such as in this matter) that analysis ends. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citation omitted) ("Statutory interpretation, as we always say, begins with the text."); *Singh v. United States Attorney General*, 945 F.3d 1310, 1314 (11th Cir. 2019) (citation omitted) ("Our analysis begins and ends with the statutory text."). "[M]aterial advers[ity]" under Alabama Rule

---

[8] In tailoring sanctions to Cochran's actions, the court expressly acknowledged "[a]lthough Cochran obtained work product from another party to the litigation, that work product was not that of an adverse party." (Doc. # 125 at 20).

11

1.9(a) requires more than a vague assertion that parties might be adverse or could become adverse at some point in the future; the text of Alabama Rule 1.9(a) requires that the party being sanctioned represent a client with interests "materially adverse to the interests of the former client." *See Ewing v. Moore*, No. 7:17-cv-00743-LSC, 2018 WL 1886700, at *1 (N.D. Ala. Apr. 19, 2018) ("[Moveants] must then show that the current matter is substantially related *and* materially adverse to [the former client's] interests." (emphasis added)); *Herrmann*, 199 F. App'x at 753 ("The second step in determining whether [nonmoveant] has violated [Georgia] Rule 1.9(b) is deciding whether the interests of the clients in the former and present representations are materially adverse.").

L.E. Bell has advanced three theories for why its interests are materially adverse to Cochran's interests and, as a result of that material adversity, how it could incur prejudice.[9] None of those theories hold merit.

First, L.E. Bell has argued that "Barker's disclosure of L.E. Bell's causation theories to Cochran confirmed what her opponent's discovery and trial strategy would be." (Doc. # 120-1 at 24). But, L.E. Bell's argument assumes that L.E. Bell and Cochran are, in fact, opponents. That is simply not the case. Cochran only has one suit pending against L.E. Bell — a no-fault worker's compensation suit. Under Alabama law, in accordance with the Alabama Worker's Compensation Act, § 25-5-1 et seq., Ala. Code 1975, "an employer must pay compensation for, and provide medical benefits as to, its employee's injury that is caused by 'an accident arising out of and in the course of [his or her] employment' without regard to the negligence of the employer or the employee.'" *Ex Parte Patton*, 77 So.3d 591, 593 (Ala. 2011) (quoting *Brown v. Patton*, 77 So.3d 587, 589 (Ala. Civ. App. 2009)). Because the Alabama Worker's Compensation Act is a no-fault

---

[9] Because prejudice often results from parties being materially adverse, the two concepts are intertwined. For purposes of determining whether L.E. Bell is materially adverse to Cochran, however, the court will also consider L.E. Bell's arguments as to how it could incur prejudice.

statute, anything Cochran has learned of L.E. Bell's causation theories (*i.e.*, theories as to who is at fault) is irrelevant to her only pending suit against L.E. Bell.[10] For this reason, Cochran's pending worker's compensation lawsuit fails to establish material adversity.[11]

Second, L.E. Bell has asserted that Cochran has "been de facto serving as lead counsel for the plaintiffs in the Colonial Pipeline Cases" and that, as a result of that alleged role, Cochran could leak confidential information or use that information to the detriment of L.E. Bell. (Doc. # 69 at 2-3). According to L.E. Bell, Cochran's interactions with other counsel in this consolidated litigation could cause prejudice to L.E. Bell (and potentially qualify as material adversity). The court finds this argument unconvincing. As an initial matter, the court will not attribute material adversity to Cochran solely because counsel for the various Plaintiffs are suing L.E. Bell and coordinating discovery with her. The court has confirmed that Cochran has not leaked any information from Barker to other counsel. And, there is no doubt good reason for that. Any leak that would help counsel in other cases to pin culpability on L.E. Bell would actually work against Cochran and her client's interests. Cochran and her client seek to prove entities other than L.E. Bell are responsible for the pipeline explosion. Helping other counsel establish L.E. Bell's

---

[10] At the hearing, counsel for L.E. Bell made the puzzling assertion that Cochran may try to assert L.E. Bell's negligence in the worker's compensation action. But, despite being questioned by the court, L.E. Bell's counsel could not provide the context in which that might occur or how it could, in any way, shape, or form, affect the worker's compensation action.

[11] In the alternative, the court rejects this argument because Cochran's worker's compensation suit is not "substantially related" under Rule 1.9(a) to any action where Barker's work with L.E. Bell's legal team (and the causation theories developed through that work) could become legally relevant. "When determining whether prior and present matters are substantially related, the focus of the court's inquiry "'should be on the precise nature of the relationship between the present and former representations.'" *Herrmann*, 199 F. App'x at 752 (quoting *Duncan v. Merrill Lynch*, 646 F.2d 1020, 1029 (5th Cir. Unit B 1981), *overruled on other grounds*, *Gibbs v. Paluk*, 742 F.2d 181 (5th Cir. 1984)). "[T]he [substantial relationship] test entails inquiry into the similarity between the factual situations, the legal issues posed, and the nature and extent of the attorney's involvement to see if information from the prior representation is material to the new representation." *Ex parte Regions Bank*, 914 So.2d 843, 848 (Ala. 2005) (quotations omitted). Because the legal issues posed in Cochran's worker's compensation suit differ from the legal issues arising in the cases in which L.E. Bell's causation theories could become relevant, the court concludes this argument fails to satisfy Alabama Rule 1.9(a)'s standard.

culpability would in that instance work against her.[12] Moreover, this attribution theory fails for the simple reason that there is no indication Cochran has "leaked" any knowledge she obtained from Barker to counsel for the other Plaintiffs or used that information in any nefarious fashion.[13] At the March 23, 2021 hearing, the court directed counsel for the various Plaintiffs to inform the court whether they had any conversations with Cochran regarding her interactions with Barker — the indication from each officer of the court was that no such conversations had occurred.

Lastly, at the hearing, counsel for L.E. Bell argued that L.E. Bell is materially adverse to Cochran because L.E. Bell has an indemnity agreement with Colonial Pipeline by which L.E. Bell must indemnify Colonial Pipeline except in cases of gross negligence. (*See* Doc. # 71-1 at 12). L.E. Bell argued that because Cochran is materially adverse to Colonial Pipeline in *Delaughder v. Colonial Pipeline Co.*, 19-cv-923 (N.D. Ala.), the indemnity agreement between L.E. Bell and Colonial Pipeline means that Cochran must also be materially adverse to L.E. Bell. As support for this argument, L.E. Bell referenced a case from the District of Connecticut in which a court analyzed "counsel['s] [prior] represent[ation of] the movant's parent or affiliate company." *Colorpix Sys. of Am. v. Broan Mfg. Co., Inc.*, 131 F. Supp. 2d 331, 336 (D. Conn. 2001). But, that case is wholly inapposite. Affiliate companies, in some situations, have interests so similar to one another that representing a company may evoke a "vicarious" attorney-client relationship for affiliate companies. *See id.* L.E. Bell and Colonial Pipeline have no such parent-subsidiary or affiliate relationship. The two companies do not share similar management personnel or a legal department; nor does one company supervise the other's litigation. *See id.* at 336-37 (concluding

---

[12] These federal cases are consolidated and in each case claims related to the same pipeline explosion have been made; therefore, there is a substantial possibility that they will be tried together. Cochran and Delaughder are suing Colonial Pipeline and Superior Land Designs LLC.

[13] The court's January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125) also prohibited Cochran from retaining any documents she received from Barker and from discussing with anyone the contents of her conversation with Barker until the conclusion of this litigation.

14

these factors weigh against a finding that a party is a "vicarious client" of his opposing counsel). And, as counsel for Cochran pointed out at the hearing, Cochran's interests are aligned with L.E. Bell's interests; Cochran is seeking to establish Colonial Pipeline acted with gross negligence, which would absolve L.E. Bell of liability under the indemnification agreement. The existence of an indemnity agreement between L.E. Bell and Colonial Pipeline, in combination with Cochran's suit against Colonial Pipeline, does not establish material adversity under Alabama Rule 1.9(a).

Accordingly, because Cochran is not materially adverse to L.E. Bell, the court concludes that Cochran has not violated Alabama Rule 5.3(b). Because Cochran's only ethical violation relates to Alabama Rules 4.4(a) and 4.4(b) (and her failure to take action after receiving an annotated report), the sanctions given in the court's January 25, 2021 Order are therefore in need of revision.

## III.   Conclusion

Accordingly, Cochran's Motion for Reconsideration and/or Clarification (Doc. # 141) and L.E. Bell's motion requesting the court modify its January 25, 2021 Memorandum Opinion and Order (Docs. # 124, 125) and disqualify Cochran (Doc. # 148) are due to be denied. Although the financial sanctions imposed by the court's January 25, 2021 Order (Doc. # 125) are due to be revisited for all of the reasons described above, because L.E. Bell has indicated it will continue to challenge the decision not to disqualify Cochran, it would be premature to go forward with an analysis of any such financial sanctions now. Thus, the court's determination of appropriate financial sanctions is due to be stayed.

A separate Order will be entered.

**DONE** and **ORDERED** this April 1, 2021.

                                                                                                 _____
                                                                                                 **R. DAVID PROCTOR**
                                                                                                 UNITED STATES DISTRICT JUDGE